UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 08-411-GWU


CONLEY JAMES HICKS,                                                    PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?
    If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful
    activity, does he have any "severe" impairment or combination
    of impairments--i.e., any impairments significantly limiting his
    physical or mental ability to do basic work activities?  If not, a
    finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine
    whether the claimant's severe impairment(s) or combination of

1

08-411  Conley James Hicks

impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

2

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

08-411  Conley James Hicks

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

08-411  Conley James Hicks

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

08-411  Conley James Hicks

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Conley James Hicks, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of stress fractures of the back, anxiety, and epilepsy.  (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Hicks retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 20-5).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 43-year-old man with a history of unskilled work, could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional restrictions. (Tr. 607).  He: (1) could not climb ladders; (2) could occasionally balance, stoop, crouch, crawl, and kneel; (3) needed to avoid extreme cold and wet conditions as well as work around hazards including dangerous machinery and unprotected heights; and (4) had a "limited but satisfactory" ability to relate to coworkers, deal with the public, interact with supervisors, deal with work stresses, and understand, remember, and carry out detailed and complex instructions.  (Id.).  The VE

7

08-411  Conley James Hicks

responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 608).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The ALJ specifically found in her decision that the functional restrictions in the hypothetical question were consistent with the medical source statement of a state agency physician who limited the plaintiff to a modified range of light work and with the opinion of Dr. Robert Hoskins.  (Tr. 20).  Dr. Hoskins, a consultative examiner, was the only examining source who listed specific restrictions, and the primary state agency reviewing physician, Dr. Amanda Lange, stated that there were no significant differences between the examining source conclusions and her own findings.  (Tr. 198).  However, there are significant unexplained differences between the conclusions of Dr. Hoskins and Dr. Lange, and the ALJ's hypothetical question was not consistent with the examiner's report.

Dr. Hoskins examined Mr. Hicks on January 12, 2005, noting that he had a long list of complaints of intermittent back pains as well as seizures.  (Tr. 177-8).  On examination, Dr. Hoskins noted that Mr. Hicks did not appear to be healthy, had great difficulty walking, and had a coarse tremor and abnormal posture, presenting an immediate abnormal appearance.  (Tr. 179).  He found moderately severe

8

08-411  Conley James Hicks

kyphosis of the thoracic spine and mild to moderate scoliosis of the thoracic and lumbar spine, with forward flexion limited to 60 degrees. (Id.). There was a strong tremor in all of his extremities and in the head, which was especially bad in the right upper extremity. (Id.). His gait was ataxic with a deep limp and tilting strongly toward the right. He could walk on his heels but could not perform a tandem walk. An x-ray of the lumbar spine showed severe degenerative joint disease and a compression fracture. (Tr. 179-80).[1] Dr. Hoskins stated that there were musculoskeletal and neurological problems identified that clearly adversely affected ambulation, standing, sitting, handling, gross and fine manipulations and traveling. (Tr. 180). There were clear objective musculoskeletal limitations "that will adversely affect even occasional light carrying, light lifting[, and] occasional bending, squatting, crawling, climbing or balancing." He also noted difficulty with balance and opined that the plaintiff's seizure disorder would eliminate many employment options and would affect attendance depending on how well it was under control. (Tr. 180-1). The physician added that he had based his assessment primarily on observations and the examination and available medical records. (Tr. 181).

_____

[1]An examining psychological source, Dr. Mary Allen Genthner, also noted fine motor tremors and "resting tremors, but no gross motor tremors." (Tr. 186). A treating psychiatrist, Dr. John Schremly, also indicated in passing that the plaintiff was "hunched over with severe kyphosis" and moved more slowly than average. (Tr. 491).

9

08-411  Conley James Hicks

As previously noted, Dr. Lange appeared to agree with Dr. Hoskins, at least overtly, but prepared a physical residual functional capacity assessment form which omitted some of the limitations given by Dr. Hoskins.  Dr. Lange indicated that Mr. Hicks could perform "light" level exertion with pushing and pulling limited in both the upper and lower extremities to an occasional basis, at least so far as operations of controls requiring precision were concerned.  (Tr. 193-4)  She appeared to indicate that gross and fine manipulation (also described as "handling" and "fingering" on the Commissioner's form) were unlimited, although there is also a partly illegible indication that manipulation would be limited to a "frequent" basis.  (Tr. 195).[2]  Dr. Lange precluded any climbing of ladders, ropes, and scaffolds and limited balancing, stooping, kneeling, crouching, and crawling to an occasional basis.  (Tr. 194).  The physician felt that Mr. Hicks should avoid all exposure to hazards such as dangerous machinery and heights and avoid even moderate exposure to cold, wetness, and vibration.  (Tr. 196).

Following Dr. Lange's report is a brief handwritten note from Dr. R. K. Brown, another state agency physician, who was apparently asked by a state agency employee to review Dr. Lange's report and provide a more specific rationalization for limitations in fingering and handling.  (Tr. 201).  Dr. Brown indicated that it was

---

[2]It appears that it had originally been typed that manipulation would be limited to only "occasional" but there is a handwritten notation that it could be "frequent."  (Tr. 195).

difficult to evaluate a tremor, but opined that Dr. Lange's findings in reference to manipulative limitations were based "solely on the subjective findings of the [consultative examiner]," i.e., Dr. Hoskins.  He opined that changing "occasional to frequently is reasonable." (Tr. 201).  The handwriting on Dr. Brown's note matches the handwritten notation on Dr. Lange's report which appears to change "occasional gross and fine manipulation" to "frequent."  (Tr. 195).

Leaving aside any possible issues regarding the propriety of one medical source altering the face of a document completed by another source without permission, and not clearly noting having done so, Dr. Brown's assertion that the findings of Dr. Hoskins were "subjective" is puzzling.  It is not clear how a physician observing a tremor in person could have more objective information.  In any case, even assuming that the evidence supports the performance of fine and gross manipulation on a "frequent" basis, the form completed by Dr. Lange defines "frequent" as "one-third to two-thirds of an 8-hour work day."  (Tr. 192).  No matter how the ALJ's hypothetical question is read, no such restriction appears.  This is a potentially significant vocational discrepancy.

Moreover, as previously noted, neither Dr. Lange or the ALJ explained the discrepancies between their conclusions and those of Dr. Hoskins, with whom they purported to agree.  The restrictions given by Dr. Hoskins arguably limit the plaintiff to even less than light level exertion, since he stated that his objective findings

08-411  Conley James Hicks

would "adversely affect <u>even occasional</u> light carrying and lifting." (Tr. 180). While Dr. Hoskins was not entitled to the deference of a treating source, as an uncontradicted examiner his opinion cannot be simply disregarded by reference to a non-examining source unless the non-examiner has had access to the entire record and clearly explains the reasons for the difference of opinion. <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, a remand will be required for further development of the physical restrictions.

The plaintiff makes certain additional arguments in his brief. One of the arguments is that the testing of the psychologist, Dr. Genthner, showed a valid full scale IQ score of 70, which raises the possibility that Mr. Hicks might meet the requirements of the Commissioner's Listing of Impairment (LOI) 12.05C. LOI 12.05C, captioned "Mild Mental Retardation," provides for an automatic finding of disability if a plaintiff can show "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." The required level of severity for the listing is met, <u>inter alia</u>, when a claimant shows "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." The ALJ mentioned the full scale IQ score of 70, as well as the plaintiff's fourth grade reading and fifth grade spelling abilities, but did not discuss the possibility of LOI 12.05C being met. (Tr. 19). The ALJ correctly

12

08-411  Conley James Hicks

noted that Dr. Genthner had placed the plaintiff in the borderline range of intelligence, rather than in the range of mild mental retardation, but the possibility that his fourth grade reading ability might be evidence of a deficit in adaptive functioning should be explored on remand.  The plaintiff also asserts that his intellectual functioning falls below the tenth percentile of the national population, which would preclude the performance of many unskilled jobs, according to The Dictionary of Occupational Titles (DOT).  Since the ALJ did not follow the requirements set out in Social Security Ruling 00-4p that the VE be questioned regarding possible conflicts between his testimony and the DOT, it is not immediately apparent whether this level of intellectual functioning would preclude the jobs or not.  This is also a matter that can be addressed on remand.

The decision will be remanded for further consideration.

This the 20th day of October, 2009.


Signed By:

G. Wix Unthank

United States Senior Judge